**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUDITH VELAZQUEZ,** *et al.,* | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | **NO. 19-3128** |
| **v.** | : | |
| | : | |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY,** | : | |
| *Defendant.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                MARCH 26, 2026

## MEMORANDUM OPINION

### INTRODUCTION

This case has a protracted procedural history summarized as follows.  Judith and Fernando Velazquez, ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals, filed this class action complaint against State Farm Fire and Casualty Company, ("Defendant"), pursuant to the Unfair Trade Partnerships and Consumer Protection Law, ("UTPCPL"), the Unfair Insurance Practices Act, ("UIPA"), the Unfair Claims Settlement Practices Act, ("UCSPA"),[1] and state law claims of breach of contract and bad faith.  After ruling on two motions to dismiss,[2] Plaintiffs only remaining individual and class claim is for breach of contract.[3]  Specifically, in the breach of contract claim, Plaintiffs assert that Defendant breached the insurance policy it issued to Plaintiffs when Defendant failed to reimburse Plaintiffs the full amount of their insurance claim.[4]

---

[1]      (ECF 1).

[2]      (*See* ECF 19, 31),

[3]      (See ECF 36) (Order granting Defendant's motion to dismiss all of Plaintiffs' claims except for breach of contract).

[4]      (ECF 28 at Counts II, VII, XI, and XVI).

Throughout the course of this litigation, Plaintiffs have changed their specific theory of liability several times.

Presently, before this Court are Plaintiffs' motion for class certification, ("Class Certification motion"), filed pursuant to Federal Rule of Civil Procedure, ("Rule"), 23,[5] and Defendant's response in opposition.[6]  In their Class Certification motion, Plaintiffs moved for certification of their breach of contract claim;[7] advanced a proposed class definition pursuant to Rule 23(b)(3); and, in the alternative, advanced proposed "issue" classes pursuant to Rule 23(c)(4) along with alternative proposed class definitions pursuant to Rule 23(b)(2) and 23(b)(3).[8]

Plaintiffs' proposed class definition pursuant to Rule 23(b)(3) consisted of the following:

> All persons who own or owned a home insurance policy issued by Defendant State Farm on Form FP-7955 in the Commonwealth of Pennsylvania whose policy was in-force on or after June 1, 2015, and who suffered a covered loss from the discharge of water, but were denied coverage for accessing a broken line or system underneath a concrete slab or foundation pursuant to Amendatory Endorsement FE-2340.[9]

---

[5]    (ECF 97).

[6]    (ECF 104).  Though Plaintiffs did not file a motion for leave to file a reply, this Court nonetheless will consider Plaintiffs' reply.  (ECF 110).

[7]    (ECF 97 at p. 13).

[8]    The issue classes include:

Whether the language of Amendatory Endorsement FE-2340 (and similar language in Form HW-2138) is ambiguous and therefore must be construed to provide coverage to access any place on the broken line or system where water escaped.

Whether Amendatory Endorsement FE-2340 is void as a reduction in coverage that was never eligible to be included in a renewal policy, and therefore renewed policies revert to the pre-2015 version making policyholders entitled to coverage to access any part of the building necessary to repair the system or appliance.

(*Id.* at p. 2).

[9]    (*Id.* at p. 1).

A hearing on the Class Certification motion was held on May 15 and May 16, 2024.[10] Following said hearing, the parties submitted supplemental post-hearing briefings.[11]  In their supplemental brief, Plaintiffs advance amended proposed class definitions and questions for its alternative issue class.[12]  As such, this Court will only address Plaintiffs' amended proposed class

---

[10]     The transcripts of the two-day hearing, (*see* ECF 133, 135) (hereinafter, "May 15 Hearing Tr." and May 16 Hearing Tr."), are cited throughout according to the transcripts' date.

[11]     These supplemental filings consisted of the following:  Plaintiffs' findings of fact and conclusions of law in support of their motion for class certification, (ECF 137), Defendant's response in opposition thereto, (ECF 147), Defendant's supplemental brief in opposition to Plaintiffs' Class Certification Motion, (ECF 140), Defendant's findings of fact and conclusions of law, (ECF 139), and Plaintiffs' response in opposition to Defendant's supplemental brief in opposition to Plaintiffs' Class Certification Motion and findings of fact and conclusions of law, (ECF 146).

[12]     Plaintiffs' supplemental briefing on findings of fact and conclusions of law included the following:

Plaintiffs' proposed F.R.C.P. 23(b)(3) class definition is as follows:

> All persons who own or owned a home insurance policy issued by Defendant State Farm on Form FP-7955 in the Commonwealth of Pennsylvania whose policy was in-force on or after June 1, 2015, and who suffered a covered loss from the discharge of water between July 16, 2018 and July 16, 2019, but were denied coverage for accessing a drain line underneath a concrete slab or foundation, pursuant to Amendatory Endorsement FE-2340.

Alternatively, Plaintiffs propose a F.R.C.P. 23(c)(4) class on the following issue:

> Whether Amendatory Endorsement FE-2340 is void as a reduction in coverage that was never eligible to be included in a renewal policy, and therefore renewed policies revert to the pre-2015 version making policyholders entitled to coverage to access any part of the building necessary to repair the system or appliance.

The issue class should be certified on behalf of the following class of policyholders:

> All persons who own or owned a home insurance policy issued by Defendant State Farm on Form FP-7955 in the Commonwealth of Pennsylvania whose policy was in-force on or after June 1, 2015, and who suffered a covered loss from the discharge of water between July 16, 2018 and July 16, 2019, but were denied coverage for accessing any part of the building necessary to repair the system or appliance.

(ECF 137 at pp. 1-2).

3

definitions and questions for its alternative issue class.  These issues have been fully briefed and

are ripe for disposition.  For the reasons set forth, the Class Certification motion is denied.

**BACKGROUND**

The following is a summary of the relevant facts gleaned from the testimony and evidence

presented at the Class Certification motion hearing and the pleadings:

In 2013, Plaintiffs purchased a homeowner's insurance policy from Defendant to insure their property at 23 Sunset Lane, Levittown, Pennsylvania.[13] The insurance policy, designated as Form FP-7955, ("the FP-7955 Policy"), covered, *inter alia*, accidental direct physical loss to the property.  The policy also noted that some losses were not covered, as those stipulated in Section 1 titled LOSSES NOT INSURED.  This provision specifically excluded from coverage:

any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, . . .

f.  continuous or repeated seepage or leakage of water or steam from a:

(1) heating,  air  conditioning  or  automatic  fire protective sprinkler system;

(2) household appliance; or

(3) plumbing  system,  including  from,  within  or around  any  shower  stall,  shower  bath,  tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time.[14]

However, this subsection contained an exception, known as "the FP-7955 Tear-Out Coverage":

If loss to covered property is caused by water or steam not otherwise excluded,  [Defendant]  will  cover  the  cost  of  tearing  out  and replacing any part of the building necessary to repair the system or

---

[13]     (EFC 137, at ¶ 1); (ECF 147, at p. 2); (FP-7955 Ins. Pol'y, ECF 97, Ex. 1, at pp. 39-64).

[14]     (Ins. Pol'y, ECF 97, Ex. 1, at p. 48).

appliance.   [Defendant] do[es] not cover loss to the system or appliance from which the water or steam escaped[.][15]

On October 21, 2014, Defendant submitted to the Pennsylvania Insurance Department for approval a proposed amendatory endorsement to the FP-7955 policy, titled FE-2340, ("the FE-2340 Amendatory Endorsement"), with the intention to include the FE-2340 Amendatory Endorsement in its customers' renewed 2015-2016 FP-7955 policies.[16]  On October 23, 2014, the Pennsylvania Insurance Department approved the proposed FE-2340 Amendatory Endorsement.[17]

The FE-2340 Amendatory Endorsement removed the exception to the LOSSES NOT INSURED provision—the FP-7955 Tear-Out Coverage—and added to the "Additional Coverages" section of the FP-7955 Policy a new section, referred to here as "the FE-2340 Tear-Out Coverage", which provided:

13. **Tear Out.**  If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, [Defendant] will also pay the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. [Defendant] will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.[18]

In August 2015, Defendant sent all policy holders, including Plaintiffs, a renewal notice regarding the new FE-2340 Amendatory Endorsement.[19]   The renewal notice included a document titled, "Important Notice," which informed FP-7955 Policy holders of the changes to the their insurance policies including that the FE-2340 Amendatory Endorsement was to take the place of the deleted FP-7955 Tear-Out Coverage; and that the new FE-2340 Tear-Out Coverage "could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or

---

[15]   (*Id.*).

[16]   (EFC 137, at ¶ 5; ECF 147, at p. 3); (Def. Application, ECF 97, Ex. 3, at pp. 85-96).

[17]   (ECF 139, at ¶ 9); (Def. Application, ECF 97, Ex. 3, at pp. 97-100).

[18]   (Def. Application, ECF 97, Ex. 3, at p. 89); (Def.'s Important Notice, ECF 97, Ex. 6, at p. 206).

[19]   (ECF 139 at ¶ 9); (Def. Application, ECF 97, Ex. 3, at pp. 97-100).

elimination of coverage."[20]    The FE-2340 Amendatory Endorsement became effective on Plaintiffs' renewed 2015-2016 FP-7955 Policy effective on September 27, 2015[21] and continued in effect for Plaintiffs' renewed 2017-2018 FP-7955 Policy covering the period between September 27, 2017 to September 27, 2018.[22]

On September 22, 2018, Plaintiffs' problems commenced.  A pipe located underneath the concrete foundation of Plaintiffs' home burst, causing water and sewage to overflow via a toilet and bathtub, which led to water damage to several rooms in Plaintiffs' home.[23]  Plaintiffs hired a plumber to repair the damages,[24] which involved, *inter alia,* the removal of a broken pipe-line from underneath the foundation of the home.  Plaintiffs filed an insurance claim with Defendant for reimbursement of the full amount of the repair costs: $6,450.  On October 23, 2018, Defendant informed Plaintiffs by letter that "a portion of [their] damage is not covered by [their] policy."[25]  In denying full coverage, Defendant relied on, *inter alia,* the FE-2340 Tear-Out Coverage.[26]

On July 16, 2019, Plaintiffs commenced this putative class action against Defendant.[27]  After their amended complaint was dismissed without prejudice,[28] Plaintiffs filed a second amended (the "operative") complaint raising individual and class action claims against Defendant.  By Order dated October 15, 2020, all of Plaintiffs' claims except the breach of contract claim were dismissed.[29]

On October 14, 2022, Plaintiff filed a Class Certification motion.[30]  In their Class Certification motion, Plaintiffs relied on expert reports from Williams Underkoffler, a public adjuster whose report centered on the calculation of damages

---

[20]    (Def.'s Important Notice, ECF 97, Ex. 6, at p. 206).

[21]    (Pls.' 2015 Renewal Certificate, ECF 37-3, Ex. 2, at p. 6).

[22]    (Pls.' 2017 Renewal Certificate, ECF 37-2, Ex. 1, at p. 5).

[23]    (EFC 137, at ¶ 11); (ECF 147, at p. 5).

[24]    (Mark McClain Depo., ECF 97, Ex. 10, at p. 24:5-9).

[25]    (ECF 97, Ex. 11 at p. 795).

[26]    (*Id.* at p. 796).

[27]    (ECF 1).

[28]    (ECF 27).

[29]    (ECF 36).

[30]    (ECF 97).

for putative class members,[31] and from Michael Pacchione, a public adjuster and former employee of Defendant whose reports, *inter alia*, provided a methodology and updated methodology for identifying potential class members by searching Defendant's Enterprise Claims System, ("ECS"), with specific parameters or terms.[32]   On November 23, 2022, Defendant filed a response to the Class Certification motion,[33] and *Daubert* motions to exclude the reports of Mr. Underkoffler and Mr. Pacchione;[34] and included its expert reports from Gary Popolizio,[35] and Linda Kaiser Conley.[36]

A two-day hearing on the Class Certification motion was held on May 15 and May 16, 2024.[37]  At the hearing, Defendant objected to Plaintiff's theory that the FE-2340 Amendatory Endorsement was void against public policy, arguing that Plaintiffs had never properly pled the contention.[38]  As noted, the parties submitted supplemental briefs after the hearing at the instruction of the Court.[39]

Following the hearing, Plaintiffs moved for leave to file a third amended complaint — conditioned upon this Court's finding that their Second Amended

---

[31]     (William Underkoffler Expert Rep., ECF 97, Ex. 2, at pp. 65-83).

[32]     (Michael Pacchione Expert Rep., *id.*, Ex. 12, at pp. 810-16).  In Orders entered on August 22, 2023 and August 25, 2023, this Court denied Defendant's *Daubert* motion pertaining to Mr. Underkoffler's expert report, (ECF 114), and granted, *in pa*rt, the *Daubert* motion pertaining to Mr. Pacchione's supplemental expert report only to the extent that he provided impermissible legal conclusions related to a separate insurance policy, (ECF 115).

[33]     (ECF 104).

[34]     (ECF 102, 103).

[35]     (Gary Popolizio Expert Rep., ECF 104-7, Ex. 5).

[36]     (Linda Kaiser Conley Expert Rep., ECF 104-9, Ex. 7).

[37]     (ECF 130, 131).  Plaintiff Judith Velazquez, Mr. Underkoffler, Mr. Pacchione, Defendant's Claim Team Manager John Cashwell, ("Mr. Cashwell"), Mr. Poplizio, and Ms. Conley testified at the hearing.

[38]     (May 15 Hearing Tr., ECF 135, at 17:20-28:19).  Defendant argued that, "[i]f the plaintiffs are arguing that the provision is unenforceable, that needs to be alleged and it needs to be alleged with specificity under *Twombly*.  You can't just throw a conclusory allegation that a contract is unenforceable." (*Id.* at 22:19-22).

[39]     These supplemental filings consisted of the following:  Plaintiffs' findings of fact and conclusions of law in support of their motion for class certification, (ECF 137), Defendant's  response in opposition thereto, (ECF 147), Defendant's  supplemental brief in opposition to Plaintiffs' Class Certification Motion, (ECF 140), Defendant's findings of fact and conclusions of law, (ECF 139), and Plaintiffs' response in opposition to Defendant's supplemental brief in opposition to Plaintiffs' Class Certification Motion and findings of fact and conclusions of law, (ECF 146).

Complaint did not properly plead their void against public policy theory.[40] On November 24, 2025, this Court denied Plaintiffs' motion for leave to file a third amended complaint,[41] finding there was no good cause to permit amendment nearly three years after the deadline set by this Court's June 28, 2021 Scheduling Order.[42] This Court noted that Defendant had been arguing since its November 23, 2022 response to the Class Certification motion that Plaintiffs' assertion that the FE-2340 Amendatory Endorsement was void as against public policy claim was "not part of this cases" as it was never pled.[43]

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 ("Rule 23") governs the certification of class actions in federal court. A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (quoting *Dukes*, 564 U.S. at 351). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

---

[40]      (ECF 138).

[41]      (ECF 148).

[42]      (*Id.* at pp. 3-4).

[43]      (*Id.* at p. 4).

To satisfy the Rule 23(a) requirements:

(1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012) (citations omitted).  If the plaintiff satisfies Rule 23(a), the plaintiff still must satisfy the "requirements of either Rule 23(b)(1), (2), or (3)." *Id.* at 590 (citing Fed. R. Civ. P. 23(a)–(b)).

As such, Rule 23(b)(1) allows a class to be maintained where "prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) permits certification when the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, "Rule 23(c) provides two additional pathways to a form of class certification." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 266 (3d Cir. 2021).  Rule 23(c)(5) permits a district court, "[w]hen appropriate," to "divide[]" a class "into subclasses that are each treated as a class under [Rule 23]." Fed. R. Civ. P. 23(c)(5).  "So if a district court detects

dissimilarities of interests between the putative class representative and absent class members, it may divide the full class into subclasses to isolate atypical issues or claims, or resolve conflicts of interest that otherwise would preclude full class certification." *Russell*, 15 F.4th at 266.

Rule 23(c)(4) states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Pursuant to [Rule 23(c)(4)], . . . a district court may certify for class treatment issues that would, upon their resolution, determine a defendant's course of conduct." *Russell*, 15 F.4th at 266 (alteration in original). "A party seeking to certify 'particular issues' for class treatment . . . must show that those issues 'satisfy[] Rule 23(a)'s prerequisites' and that those issues are 'maintainable under Rule 23(b)(1), (2), or (3).'" *Id.* at 267 (alteration in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). The United States Court of Appeals for the Third Circuit, (the "Third Circuit"), has "adopted a 'non-exclusive list of factors [to] guide courts' faced with motions to certify particular issues." *Id.* at 268 (quoting *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011)).

## DISCUSSION

As a preliminary matter, the Court considers and agrees with Defendant's argument that Plaintiffs' Class Certification motion improperly raises a new legal theory that was not pled in the operative complaint.[44] Specifically, Defendant argues that Plaintiffs failed to plead the theories of liability upon which they now attempt to rely on that the FE-2340 Amendatory Endorsement is contrary to Pennsylvania's Unfair Insurance Practices Act, ("UIPA), 40 P.S. § 1171.3, and, thus, void as against public policy.

---

[44]    (ECF 139 at ¶¶ 310-328); (May 15 Hearing Tr., ECF 135 at 17:20-28:19).

"Class certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Walden v. Bank of New York Mellon Corp.*, No. 2:20-CV-01972-CBB, 2025 WL 2696463, at \*4 (W.D. Pa. Sept. 22, 2025) (internal quotation marks omitted) (quoting *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011)).   Putative class actions must comply with federal pleading rules and provide notice of the claims alleged against the defendants.   Fed. R. Civ. P. 8(a)(2).   The Third Circuit has held that, for a plaintiff to provide fair notice of their alleged claims against a defendant, a complaint

> needs just "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   That statement, in turn, must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   But the complaint does not have to be more specific than that.

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021).

If a claim has not been alleged in a complaint, a district court cannot certify a class to litigate those claims.  *See Anderson v. U.S. Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("[W]e hold that the district court abused its discretion by certifying a class based on claims not pleaded in the complaint.   The district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not pled."); *Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*, No. 11cv1057-GPB (RBB), 2012 WL 6591610, at \*3 (S.D. Cal. Dec. 18, 2012) ("Plaintiffs may not certify a class based on claims not asserted in the complaint").

Plaintiff's Class Certification motion argues exclusively on a breach-of-contract theory that, in relying on the FE-2340 Amendatory Endorsement that was void as a matter of public policy, Defendant breached its original FP-7955 Policy by denying Plaintiffs coverage.   Based on

a careful reading of the operative complaint,[45] Defendant could not have known that Plaintiffs breach of contract claim was premised on such a theory.

As a federal court sitting in diversity, this Court applies Pennsylvania law to Plaintiff's substantive claims for breach of contract and the Federal Rules of Civil Procedure with respect to the adequacy of the pleadings. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (quoting *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under Rule 8, there is no allegation/pleading within the operative complaint sufficient to state Plaintiffs' theory of liability upon which it now attempts to certify a class. There is no averment about the UIPA in the operative complaint being tied to Plaintiffs' breach of contract claim, nor any averments that the FE-2340 Amendatory Endorsement was unenforceable due to being void against public policy. Additionally, although Plaintiffs chose to rely on the UIPA in their first amended complaint, upon amending their complaint after the initial dismissal, Plaintiffs made no reference to the UIPA. Based on these circumstances, Plaintiffs' Class Certification motion is denied.

Plaintiffs have consistently argued that they properly pled a void against public policy theory in their operative complaint. In their January 10, 2023 reply to Defendant's response to the Class Certification motion, Plaintiffs argue that its remaining breach of contract claims "includ[ed] the threshold issue of the Endorsement's enforceability and interpretation."[46] Plaintiffs also contend at the May 15, 2024 hearing that the "[b]reach of contract claims and the breach of good faith and fair dealing inherently involve the enforceability of the contract provisions."[47] In their

---

[45]     (ECF 28).

[46]     (ECF 110 at p. 3).

[47]     (May 15 Hearing Tr., ECF 135, at 22:24-23:1).

July 5, 2024 findings of facts and conclusions of law,[48] Plaintiffs argue that they "effectively plead that Defendant breached its insurance contract due to the endorsement being unenforceable as it [was] void as well as being unenforceable as it [was] against public policy."[49]  Plaintiffs finally argue in their August 2, 2024 response to Defendant's proposed findings of fact and conclusions of law that they have "adequately pled a claim for breach of contract premised on the inconsistency of the [FE-2340] Amendatory Endorsement with the [UIPA]."[50]  This Court is unpersuaded because, on its face, the operative complaint[51] does not contain the allegations or claims Plaintiffs now insist are there.

Plaintiffs appear to concede this pleading deficiency in attempting, just after post-hearing briefing and findings of fact and conclusion of law were submitted by the parties, to amend their complaint a third time.[52]  The motion to amend was denied for lack of good cause.[53]  Based on the totality of evidence before the Court, Plaintiffs have not met their burden for class certification.

**CONCLUSION**

For the reasons set forth, Plaintiffs' motion for class certification is denied.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[48]     (ECF 137).

[49]     (ECF137 at p. 16).

[50]     (ECF 146 at p. 9).

[51]     (ECF 28).

[52]     (ECF 138).

[53]     (ECF 148).